UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS,<br><br>               Plaintiff,<br><br>        v.<br><br>A. NOCHA, et al.,<br><br>               Defendants. | Case No. 1:22-cv-00095-SKO (PC)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*** (Doc. 9)<br><br>**ORDER DIRECTING PAYMENT OF INMATE FILING FEE BY CALIFORNIA DEPARTMENT OF CORRECTIONS**<br><br>**ORDER DISCHARGING ORDER TO SHOW CAUSE** (Doc. 10) |

Before the Court is Plaintiff's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 9.) Because Plaintiff has accrued three "strikes" under section 1915(g),[1] Plaintiff must show that he is under imminent danger of serious physical injury at the time of the filing of

---

[1] The Court takes judicial notice of the following United States District Court Cases: (1) *Williams v. Aparicio*, Case No. 2:14-cv-08640-PA-KK (C.D. Cal.) (dismissed February 5, 2015 as time-barred); (2) *Williams v. Kerkfoot*, Case No. 2:14-cv-07583-GW-KK (C.D. Cal.) (dismissed May 15, 2015 as time-barred); and (3) *Williams v. Young*, Case No. 2:14-cv-08037-PA-KK (C.D. Cal.) (dismissed May 19, 2015 as time-barred). *See Belanus v. Clark*, 796 F.3d 1021 (9th Cir. 2015)

The Court also takes judicial notice of three of Plaintiff's prior appeals that were dismissed as frivolous: (1) *Williams v. Paramo, et al.*, No. 18-55319 (9th Cir. Sept. 19, 2018); (2) *Williams v. R.J.D. Medical Staff Building, et al.*, No. 18-55709 (9th Cir. Sept. 19, 2018); and (3) *Williams v. Navarro, et al.*, No. 20-56163 (9th Cir. Jan. 13, 2021). Each of these appeals was dismissed before Plaintiff initiated the current action.

his complaint in order to bring this action. Plaintiff has made that showing and the Court will grant his motion. Further, the Court will discharge the Order to Show Cause previously issued, as addressed below.

## I.   MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff is subject to 28 U.S.C. § 1915, which provides that "[i]n no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### A.  Plaintiff's Complaint

Plaintiff's complaint is signed and dated October 1, 2021. (Doc. 1 at 10.) An accompanying declaration of service to the Clerk of the Court is signed by Jorge Ruiz and is also dated October 1, 2021. (Doc. 1 at 11.) A Clerk's Notice dated November 1, 2021, reflects the Court received Plaintiff's complaint on November 1, 2021, via U.S. Mail, and returned it unfiled because the institution housing Plaintiff participated in the e-filing program. (Doc. 1 at 12.) The complaint was ultimately filed with this Court[2] on December 16, 2021.

In claim one of his complaint, Plaintiff contends that on June 27, 2021, he was attacked by his cellmate and sought assistance from defendant Rocha and his partner in the unit office. (Doc. 1 at 3.) Rocha offered to move Plaintiff, but Plaintiff asked why he was to be moved when his cellmate was the problem. (*Id*.) Rocha replied that Plaintiff "had nothing coming because of all the complaining [Plaintiff] filed on staff." (*Id*.) Rocha then stated, "'Man up if you don't go back to your cell, I'm gonna issue you a 115 rule violation.'" (*Id*.) Plaintiff refused to return to his cell as he feared for his safety. (*Id*.) He asked "to be taken to the hole." (*Id*.) Plaintiff was taken to the holding cell while Rocha called a sergeant. (*Id*.) Rocha and defendant Florez returned, and Rocha advised Plaintiff he had three options, including returning to his cell, moving to "cell 3 in A-section" or to "man up." (*Id*.) Plaintiff was given 30 minutes to decide. (Doc. 1 at 5.)

---

[2] The case was transferred from the Sacramento Division to the Fresno Division on January 24, 2022. (Doc. 5)

Plaintiff went to speak with "Resendiz and Nicholas and Thomas in A-section" about a move, but it was not possible at that time. (*Id.*) Because a move to A section was not possible, Plaintiff advised defendants Rocha and Florez that "he wanted to go to the hold because he has enemy and safety concerns," after his cellmate stabbed him with a pencil. (*Id.*) Rocha and Florez refused, forcing Plaintiff to return to the "same cell with [his] aggressive, violent" cellmate; Rocha and Florez also threatened to use force upon Plaintiff and to file 115 disciplinary proceedings against him. (*Id.*) Plaintiff replied he would "be filing a lawsuit and a 602 staff complaint for failure to protect." (*Id.*) Plaintiff contends that "out of the blue both defendants Rocha and Florez rush [him] and smashed him into holding cell gate and began aggressively searching" him. (*Id.*) Rocha then pushed Plaintiff's head into the gate, causing Plaintiff's forehead to swell and a knot to form. (*Id.*) Florez grabbed Plaintiff by the back of the neck and punched him in the back, causing Plaintiff pain. (*Id.*) Plaintiff asked to see a nurse and both Rocha and Florez refused his request. (*Id.*) Both also threatened to kill him and to "give him a 115 rule violation," adding that "he better not snitch." (Doc. 1 at 6.)

Plaintiff alleges that when Rocha and Florez returned him to his cell, Plaintiff's cellmate asked them "if it was okay if" he, Plaintiff's cellmate, "got down with" or fought Plaintiff because Plaintiff was "getting on their nerves" and "was a pervert." (*Id.*) Rocha and Florez told Plaintiff's cellmate "to handle it and they gave him the thumbs up." (*Id.*) Plaintiff "eventually received" a 115 rules violation authored by Rocha in retaliation. (*Id.*)

In claim two of his complaint, Plaintiff contends that on July 18, 2021, he was assaulted by defendant Florez near the program office. (Doc. 1 at 4.) Florez pushed Plaintiff "in the chest extremely hard and in the forehead," causing Plaintiff's head to "jerk back." (*Id.*) Florez then threatened, "I'm right here, do something, I'll kill you, I'll beat you to death, you remember what happen [sic] before." (*Id.*) Plaintiff states that put him "in imminent danger of serious physical injury and made an administrative grievance process moot." (*Id.*) Plaintiff contends that later, outside the program office following a hearing in which Florez was a participant, Florez grabbed Plaintiff "by the neck and lifting him off ground by his neck and releasing one hand to pinch [P]laintiff in the stomach dropping him to the ground and kicking him the ribs." (*Id.*) While

Plaintiff was on the ground, defendant Magallanes said to Plaintiff, "that's how you follow orders, get his ass out of here" and "Williams say nothing, or go to medical and you [sic] dead." (*Id.*) When Florez then grabbed Plaintiff, correctional officer A. Franco said, "'that's not cool guys,'" and Florez replied, ""I'm just finishing up what I didn't finish last time.'" (Doc. 1 at 7.) Plaintiff was "thrown outside of program office" and "stumbled up and stumbled in pain and ran in pain back to his then housing unit." (*Id.*) Plaintiff had just "yelled to A. Franco call me nurse." (*Id.*)

Later that day, after being called to the program office about a 602 grievance, "Florez began making threats upon [P]laintiff's safety citing he would fuck [P]laintiff up ... 'I'm right here Williams I'll fuck you up you know what happen [sic] before I'm gonna get you, keep writing my partners up a toe tag parole is coming, give me any reason I'm on your ass bitch.'" (*Id.*) Plaintiff "immediately ran away" across the yard and back to his housing unit in fear of Florez. (Doc. 1 at 7-8.) Florez's size and "history of assaults" placed Plaintiff "in imminent danger of serious physical injury." (Doc. 1 at 8.)

In claim three of his complaint, Plaintiff contends that on August 7, 2021, defendant Florez approached Plaintiff on the yard. (Doc. 1 at 9.) Despite Plaintiff having "approved authorized C-status yard" use, Florez told Plaintiff he was giving Plaintiff a 115 "for being out of bounds." (*Id.*) Plaintiff contends this was "retaliation and substantiates all claims against" Florez. (*Id.*) When Plaintiff told Florez he had permission to be out in the yard and would write Florez "up for harassment," Florez replied, "'If you do that, I'll do you like all the other times but I'll finish job and make you disappear." (*Id.*)

**B.  The Imminent Danger Exception**

In light of the foregoing, Plaintiff's complaint plausibly alleges facts sufficient to suggest he faced imminent danger of serious physical injury at the time of the filing of his complaint. *See Andrews v. Cervantes*, 493 F.3d 1047, 1052-53 (9th Cir. 2007).

Because Plaintiff has made the showing required by § 1915(a), his request to proceed *in forma pauperis* will be granted. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. § 1915(b)(1). Plaintiff is obligated to make monthly payments in the

4

amount of twenty percent (20%) of the preceding month's income credited to Plaintiff's trust account. The California Department of Corrections is required to send to the Clerk of the Court payments from Plaintiff's trust account each time the amount in the account exceeds $10.00, until the statutory filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II.    OSC RE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

On February 1, 2022, this Court issued an Order to Show Cause Why Action Should Not Be Dismissed For Failure To Exhaust ("OSC"). (Doc. 10.)

Regarding claim one of Plaintiff's complaint, Plaintiff acknowledged administrative remedies are available at his institution, but checked the box "no" when asked whether he submitted a request for administrative relief and whether he appealed the request to the highest level. (Doc. 1 at 3.) Plaintiff explained he did not submit a request or an appeal because he "was placed in imminent danger of serious physical injury." (*Id*.) As to claim two, Plaintiff acknowledged administrative remedies are available and checked the box "yes" when asked whether he had submitted a request for relief and whether he appealed the request to the highest level. (Doc. 1 at 4.) As to claim three, Plaintiff again acknowledged administrative remedies are available and checked the box "yes" when asked whether he had submitted a request for relief and whether he appealed the request to the highest level. (Doc. 1 at 9.)

In his response to the OSC filed March 25, 2022, Plaintiff contends that: (1) defendants are "estopped" from claiming Plaintiff failed to exhaust his administrative remedies because Plaintiff "was in imminent danger of serious physical injury" by defendants; (2) "due to the assault and threats" made by defendants, Plaintiff "was in fear of pursuing any administrative remedies;" and (3) Plaintiff "was also in fear of retaliation" from defendants due to the "threatening comments made to him if he filed any grievance." (Doc. 13 at 1.)

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under … any … Federal law … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007)

1  (citation omitted). Inmates are required to "complete the administrative review process in
2  accordance with the applicable procedural rules, including deadlines, as a precondition to
3  bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion
4  requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532
5  (2002), regardless of the relief sought by the prisoner or offered by the administrative process,
6  *Booth v. Churner*, 532 U.S. 731, 741 (2001). In general, failure to exhaust is an affirmative
7  defense that the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. However, courts
8  may dismiss a claim if failure to exhaust is clear on the face of the complaint. *Albino v. Baca*, 747
9  F.3d 1162, 1166 (9th Cir. 2014).

10  Plaintiff contends he is excused from administratively exhausting his claim because he
11  was in imminent danger of serious physical injury. However, that is an unsettled question in this
12  Circuit. *See, e.g.*, *Thompson v. Allison*, No. 1:21-cv-00001-JLT (PC), 2021 WL 535360, at *2
13  (E.D. Cal. 2021) ("it is unclear whether an 'imminent-danger exception' to the exhaustion
14  requirement exists in the Ninth Circuit"). This Court has previously determined the imminent
15  danger exception does not apply for purposes of administrative exhaustion. *See Wilson v.*
16  *California Dep't of Corr. & Rehab.*, No. 1:18-cv-01508-LJO-JLT, 2019 WL 2464946, at *4
17  (E.D. Cal. 2019) ("'imminent danger exception' … applicable only to determinations made in
18  response to motions to proceed in forma pauperis"); *Williams v. Bal*, No. 2:12-cv-010050EFB,
19  2012 WL 2065051, at *2 (E.D. Cal. 2012) ("no authority supporting … 'imminent danger'
20  exception to the mandatory exhaustion requirement"); *Severson v. Igbinosa*, No. 1:10-cv-02217,
21  2011 WL 870895, at *3 (E.D. Cal. 2011) ("no exception to the exhaustion requirement for
22  imminent harm").

23  At this stage of the proceedings, the Court will order the OSC be discharged as it cannot
24  be said Plaintiff's failure to exhaust his administrative remedies is clear from the face of the
25  complaint. *See Albino v. Baca*, 747 F.3d at 1166.  Plaintiff is cautioned that, if and when
26  defendants are served with the operative complaint in this action, defendants will not be
27  precluded, or as Plaintiff contends "estopped," from asserting the affirmative defense of a failure
28  to exhaust administrative remedies, whether in a responsive pleading such as a motion to dismiss,

or a later motion for summary judgment. In other words, Plaintiff's response to the OSC and its subsequent discharge does *not* operate to bar defendants from employing the affirmative defense at a later stage of the proceedings. *Jones*, 549 U.S. at 204, 216.

Finally, Plaintiff is advised that his complaint will be screened in due course. *See* 28 U.S.C. § 1915A(a).

### III. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's application to proceed *in forma pauperis* (Doc. 9) is GRANTED;
2. **The Director of the California Department of Corrections or his or her designee shall collect payments from Plaintiff's prison trust account in an amount equal to twenty percent (20%) of the preceding month's income credited to the prisoner's trust account and shall forward those payments to the Clerk of the Court each time the amount in the account exceeds $10.00, in accordance with 28 U.S.C. § 1915(b)(2), until a total of $350.00 has been collected and forwarded to the Clerk of the Court. The payments shall be clearly identified by the name and number assigned to this action**;
3. The Clerk of the Court is directed to serve a copy of this order and a copy of Plaintiff's *in forma pauperis* application on the Director of the California Department of Corrections, via the Court's electronic case filing system (CM/ECF);
4. The Clerk of the Court is directed to serve a copy of this order on the Financial Department, U.S. District Court, Eastern District of California; and
5. The Order to Show Cause issued February 1, 2022 (Doc. 10) is DISCHARGED.

IT IS SO ORDERED.

Dated: **March 31, 2022**         /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE